You can call the first case. Thank you. It's the council. Could you step up for a moment? Yes, everybody. So we can get your names and we'll have to stop you and tell us who you represent. And I represent the Plano's and Avalon's Children's District of Baltimore and his estate. Good morning, Your Honor. It's Virginia Price of McGuire Woods here on behalf of United Technologies Corporation and Walter Aketa Portable Equipment Inc. Nicholas Giles, also of McGuire Woods, and I'm also on behalf of United Technologies Corporation. Thank you. Neal Holman, on behalf of Troy and Trina Lewis, Airbnb Inc. and Airbnb English. All right. Okay. In terms of the way we'll proceed, we got a motion asking that you split your time and I left the motion downstairs. So you just let me know if I've got this right. United and Kitty are going to take 10 minutes and Lewis and Airbnb are going to take 10 minutes. Yes, Your Honor. And I have a copy of the order. No, I just, she's got a copy. I left mine on my desk. Yeah, and I know I just wanted to put it on the record that you had 20 minutes, 10 and 10. And council, you have 20 minutes. Thank you. All right. Okay. And this is not a, yeah, this is not a microphone. It is a recording device. So please keep your voices up loud and clear. Do I understand correctly under the rules, I'll have time for rebuttal, even if I use my full 20 minutes? Yes. Yeah. We don't do that. I tried to a couple times. Very reminiscent of Dr. Strange. Your Honors, it's my great pleasure to be here on behalf of the children of Baltimore Zamora, Sr., who tragically burned to death when a Kitta ionization smoke detector failed to give any warning, even though it was enveloped in the smoke from a slow smoldering fire. The standard of review as conceded by the appellees in this case is de novo because the motions judge made no factual findings, made no credibility determinations, and decided this case on the very papers that are before this court. So this is a fresh look for your Honors, and I would very much appreciate and encourage you to do that. I won't touch on every argument I made in my papers, and I apologize for their length. But I want to make sure that the court understands I'm not waiving any of those arguments if I don't raise them here as a moral argument. I'm trying to be focused and give you what I think is the most important things to think about in the case. This case, I think, really involves two real pillars of Illinois law. That is, what is the standard under which a motion to dismiss should be decided? Because that's the order that was entered here, on a motion to dismiss. And what allegations are deemed sufficient to create a cause of action, or state a cause of action, based on specific personal jurisdiction over out-of-state defendants like KIDA, UTC, and Lewis? Now, following Mr. Zamora's death, it is undisputed that KIDA added to the backside of the packages of its ionization smoke detectors a warning that said, leading authorities strongly recommend that both ionization and photoelectric alarms be installed to help ensure maximum detection of the various types of fires that can occur. That message goes on to admit that the ionization smoke detectors that were present in the Airbnb rental that Mr. Zamora died in are not reliable in detecting slow, smoldering fires. Yet, through the four years before Mr. Zamora's excruciating death, KIDA and UTC... I just want to stop the count. I mean, I know that's a wonderful part of the argument, but it doesn't go directly to the jurisdiction issue, which is really our big issue. Sure, sure. Well, and I don't mean to be too theatrical. I understand this is the appellate court. We all like that. And with all due respect, I think the fact that there's unconverted allegations that these defendants made misrepresentations in the state of Illinois, not only in thousands of radio and TV ads, but at the very stores where Mr. Zamora worked, is critically important, with all due respect. Well, that's if we believe that that's not his. No, no. No, no. That's... With Mr. Zamora. This has been alleged in the First Amendment complaint. It has been testified to by the vice president of KIDA that they in fact aired thousands of radio... No, that Mr. Zamora saw them, is what I'm saying. Oh, yeah, but that's... That Mr. Zamora was aware of them and relied on them. Right, and that's what he alleged. And it's not controverted by any affidavit. And that's why I focused on the standard for a motion to dismiss. You all know this very well. The standard is that... It's well-pleaded facts, though. Yeah, and if that was the problem, they should have raised it before. They didn't argue before the trial court that these are not well-pleaded facts, because if that were the case, it should have been dismissed with prejudice. I'm sorry, I'm wrong. Didn't the trial court strike all those portions of Mr. Zamora's affidavit with regard to what he knew or didn't know about these smoke detectors? It was the children of Mr. Zamora who described in their affidavits what he had told them. And weren't those portions all stricken? They were. And this appeal does not depend on those affidavits. That's a red herring that the defendants have spent a lot of time on. This appeal is about what happens in a motion to dismiss where it's alleged that a man relies on these representations made, not just over the airways but in the various stores he worked, and where they provide... Counsel, there's also a simultaneous case, the exact same complaint in Maine. Is that correct? No, Your Honor, just so you understand that argument, the statute of limitations is about to expire in Maine, and because of the time required to bring this appeal, if we didn't file it in Maine, we'd lose the chance to do that in the event we're not successful. Why not just proceed in Maine where you wouldn't have to overcome this enormous jurisdictional hurdle? Well, the first reason is because in Maine there is a cap on the non-economic damages. Ah, there we go. Okay. Well, that's not a sinister or terrible reason. In fact, that's the reason why someone who's not only a citizen should be able to avail himself of the constitutional rights he has here in this state that he would not have in Maine. So this idea that we have conceded that Maine is the proper venue is mistaken, is mistaken. So just so I'm very clear on this, these representations, these ads, these packages, all of that is not based on anything Mr. Zamora said. It's based on testimony from their witness and their documents. So they have put on TV and radio ads that say nothing about the difference between ionization and photorecord smoke detectors for years. They have sold their ionization smoke detectors in packages that say general use for general purpose. They have put displays in the very Home Depot stores where Mr. Zamora worked that display all the kit of products and don't say a word about the fact that there are two kinds of smoke detectors, ionization and photoelectric, and that you must have both to be protected. That's not Mr. Zamora's testimony. That's not his children's affidavit. That's their admission. That's their documents. So I want to make sure that the record's very clear on that. And if I misspoke or somehow misled the court, I apologize. But that's very important that we understand that. Let me talk about the Lewises a little bit. In addition to Kitta, one of the other defendants is the Lewises and Airbnb, although I want the court to understand, if it's not clear, Airbnb did not challenge personal jurisdiction before the trial court. So they're not on appeal here on that issue. The only issue they're on is an order that was entered that would require them not to destroy documents related to other lawsuits and claims. So on July 21, 2016, the Lewis defendants entered into a contract with Airbnb, like many homeowners do. And pursuant to that contract, there's something very specific and important to this case which required that the Lewis defendants were obligated to confirm a booking request or it would automatically expire. And, Your Honors, I don't know if you've ever rented an Airbnb or not, but it's done on a website through a platform. And that part of the contract I just talked about is very important because one of the arguments you'll hear from the Lewis defendants is, we put this thing on the web and somebody in Illinois just happened to grab it. But, counsel, doesn't that run into, I'm going to butcher this name, Pilopakis v. Yackel? You have a Michigan Lodge. You have people from Illinois renting it. They're advertising. They have brochures coming. And the court in that case said, nope, no jurisdiction. Yeah, because there was no allegation that any of those communications by the Lodge in Michigan had anything to do with the carbon monoxide risks that the plaintiffs faced and they ultimately died from. Here, we allege, and the evidence shows, that there were affirmative representations made by the Lewis's about. What was it? I'm sorry? What was it other than amenity is a local law? Yeah, the word amenity is a very specific term. But to their knowledge of kiddie smoke alarms, what did the Lewis's say? They said, we have smoke alarms. They didn't say we have kiddie ionization smoke alarms or kiddies or anything. We have smoke alarms. How are they representing to anybody who looks on the website that they have kiddie ionization and or photo electric smoke detectors? Yes. Photo electric smoke detectors. They didn't have any of this. I'm just. Yeah, no, I get it. I get it. And I wouldn't say they did. I'm not suggesting they said, hey, come to our place because we've got kiddie ionization smoke detectors and we'd love them. That's not what they said. Then what did they do besides offer one house for two nights to the world? Yeah. There are a couple of different things. So let me, can I finish up on this point and I'll get right to your point? Please do. So this point is that it wasn't Julie Gilbert, that's Mr. Zamora's girlfriend who rented the Airbnb that they stayed at. It wasn't that her act of saying, hey, I'm interested in your Airbnb caused the Louis's to do business in Illinois. This contractual provision with Airbnb says that the Louis's must affirmatively say, okay, you're our person. We're going to take you. That is an affirmative acknowledgement with knowledge that these are people from Illinois who are coming to this. So I want to understand. So you're saying that minimum contract. No, no. I'm saying that that's a purposeful availment, and that is one of the arguments that allows, that's one of the bases that allows even a single or occasional act to be the basis for jurisdiction. And I'll talk about those bases. Do you have a case that says that? One act? Yes. One act? Yes, I do. Yes, I do. What is the case? I mean, without any false representations or anything. Well, while I'm looking at that, I'll tell you that we've alleged that the Louis dependents did make false representations about the kit of smoke detectors. They didn't say kit. You just said they didn't say kit. About the smoke detectors in their Airbnb rental, which were kit of smoke detectors. What happened? And they made, so we allege that they knew about the deficiency of the ionization smoke detectors, and that they omitted saying anything to our Illinois residents. Now, they've submitted substantial affidavits in this case. I urge the court to look at those. They don't say a word to contravene that allegation. You'd think the first thing they'd say is, we had no idea that ionization smoke detectors don't detect slow smoking fires. That's nowhere in their affidavit. They don't even contest our allegation that they affirmatively misled our plaintiffs. So that's why I think the pillar that's so important here is, what happens in a motion to dismiss? We haven't been able to deduce all the evidence. We've made allegations, and they've made a motion. And it's, frankly, unfair to the plaintiffs to say, well, where's your proof? Where's your proof? This is not a motion for summary judgment. This is not a trial that's gone on. This is at the very beginning stages of a lawsuit. And what Illinois law says is, if I make an allegation, and you have a legitimate basis to contest it in a motion to dismiss, you put it in an affidavit. And their affidavits don't refute in any way that they knew about the deficiencies of the ionization smoke detectors or that they failed to provide that information to the Lewis or to the Mr. Zamora and his group. One of the things I'm going to mention is you've read these cases that have been cited by the Lewis defendants involving eBay transactions. And what's critically important here is this contract provision I'm telling you about. In eBay, the successful bidder and the person who's offering the item have no communications, and the person who's offering the item has no way of knowing or controlling who will buy their product. That's very different here. Here, when Julie Gilbert said, I'm interested in your Airbnb and registered for a booking request, put a booking request on their system, that was not the end of it. The Lewis defendants had to affirmatively decide whether they wanted to have Julie Gilbert from Illinois and her boyfriend and his family from Illinois come and stay at their Airbnb. And that means that it's completely different than the eBay cases. But in your argument, it sounds like you're trying to indicate that they were targeting Illinois, that they were actually looking for individuals in Illinois. I mean, this was just a request that was sent out. Sure. And I'll bite, I guess, on that argument. Because I think it's – I don't think it's correct. If I send out on the World Wide Web an advertisement for my home to rent, it doesn't mean that I'm not targeting anywhere. Because that's the argument, if you think about it. So nowhere is the focus of their target is what they're saying. I think that the opposite is true. Everywhere is their target. That means they rent somebody a room in Asia and they say, yeah, we'll accept you. Somebody in Asia can call them into court. I mean, there is a due process issue. Oh, absolutely. Absolutely. Anywhere in Europe. You know, in Australia. I love Australia. I love Australia, too. I mean, because I rent my room, my house to somebody for a couple of days, they can drag me across the world. Yeah, but if they lie to you about your safety, that's – and I know you don't want to – it's hard to say that about people. And I don't say it lightly. They didn't say we have a KEDA smoke alarm. They said we got smoke alarms. And so I don't know where the affirmative lie is coming from. It's also in the omission. There's a fraudulent omission right now. I know that I'm luring you to my Airbnb, and I happen to buy the cheapest smoke detectors that I know really don't work very well, especially in slow-smoking fires, but I call them an amenity and then don't tell you about that. That's a fraudulent omission. And that's what's been alleged here, a fraudulent omission by these main residents. What about the responsibility of the purchaser? Don't they have an obligation as well to determine whether or not what's represented in the agreement is what's represented in the agreement? The purchaser? Yeah, so in this case, I mean, it's not a purchaser, but someone who's renting, right? So in the agreement it said smoke detector, right? So if they were concerned of what type of smoke detector, didn't they have a responsibility to inquire what kind of smoke detectors do you have? They – Mr. Zamora didn't know about two different kinds of smoke detector, just as almost anybody in this room didn't know about that because – Did the Lewises know? That's what we allege, and they don't – they don't controvert it. We allege they knew about the deficiencies in the ionization smoke detectors. They don't – their affidavits, I would have thought the first thing they'd say is, we're as surprised as you to hear that ionization smoke detectors don't detect slow-smoldering fires. We didn't know that. We would never have put those in there. If we knew better, we'd have both ionization and photoelectric. And that's what – that's what these people are telling the world on the back of the package, and it's got a public safety issue that goes way beyond this case and all around this state and around this world. So to your point, what did the Lewises know and what didn't they say? We're at a motion-to-dismiss stage. We haven't deposed them. We don't know exactly what they will say, but we know what we allege, and we know that they had an opportunity in their affidavit to say, oh, no, we didn't know. We didn't know. But to your point, Your Honor, why is it that Mr. Zamora wouldn't have known to say, hey, what kind do you have? Are they ionization or photoelectric? Because KIDA never revealed the existence of both kinds of smoke detectors or the need for both. As I was saying, if you looked on the shelf in a Home Depot where Mr. Zamora worked for decades, the packaging on the front says general use for general purpose. Well, if I know, as KIDA did, that this kind of smoke detector is only good for flash, fast flaming fires, I can't call it general use. That's misleading, right? So that's why, to your point, it was a great one. Why didn't Mr. Zamora or Julie Gilbert say, well, what kind of smoke detectors they are? Because our allegations in this case, and they're not denied in any affidavit submitted by KIDA, is that they never told anybody in their thousands of radio and TV ads that there are two kinds of smoke detectors and you better have both because you don't know what kind of fire you're going to get. And to your point, and I appreciate it, Your Honor, about this is out on the World Wide Web, is that enough? And maybe that's not. But what happened here is Julie Gilbert, who was Mr. Zamora's girlfriend, wrote to the Lewis's and said, and I'll read this real quickly because it's kind of short, Hello, my name is Julie. I'm from Damerscott but live in Chicago. I'm having a surprise 50th birthday for my boyfriend and we would love to stay in Booth Bay. We are bringing his daughter, son, and two children who've never been to Maine. Is your place available? We'd love it if so. We look forward to hearing from you soon. Thanks so much. So the record shows that completely different from spreading something around the world on the web, at that moment the Lewis's knew that they were negotiating with people from the state of Illinois and that people from the state of Illinois would be staying at the Airbnb renting. That is the kind of purposeful availment that the cases You should make that argument for every single person that said we want to stay there no matter where they were. If they said yes, we'll take you. Then they're purposely availing themselves of anybody who says they want to stay there and they say yes. Well, but there's more. I need to stop interrupting you. That's okay. Just because it makes really no sense to me. If my property is available to the world, anybody who sends me a request no matter where they are, if I say yes, under your argument, I would have purposely availed myself or submitted myself really to the jurisdiction of that wherever that person lived. But it's more than that, Your Honor, because it's not just being advised as they were that they were negotiating with Illinois citizens. It was actual negotiation with those citizens. It was a situation in which, and it's very, the nexus is very close here. It is Julie Gilbert saying we want to host a party if you're Airbnb. You didn't say party. You put the word party. You just read it to me. Surprise 50th birthday party. No, you didn't say party. Oh, 550th birthday. Right, yeah. Okay, you think that's significant, Judge? I think it, I don't know. If I had my boyfriend, and I don't have one, by the way. My boyfriend and his two grown children, two other kids, if I was having a dinner for them, you know, I don't know what the 50th birthday celebration was. It's a party. I don't know if it's, all right. The facts are we know it was a party. And that's what's been alleged in the complaint. But we're talking about the alleged hook that the Lewis took. But the other substantial connection, nexus, is knowing that there would be this large gathering for a 50th birthday, it's not unreasonable to, in fact, it's quite foreseeable that there would be candles, matches, all the things that go along with a birthday, right? So the Lewis' knowing that the smoke alarms in their Airbnb rental are inadequate, fraudulently omitted any information to the Illinois citizens by saying, look, hey, these smoke detectors are not going to detect certain kinds of fires. Right? They didn't say anything like that. Instead, they agreed to allow the party, or the celebration, whatever you want to call it, take place. So not to corrupt you, but so what you're saying is that because of this world today that we live in in terms of Internet communication, social media, and so on and so forth, if one party communicates with another party one time only, right, then one of the parties is going to be subjected to the other party's jurisdiction. Regardless of how long that communication is, because that's what happened here. Yeah, it was, yeah, I don't mean to cut you off. I'll concede the communications were short, and it's very typical of what people do today in terms of their communications. They often don't talk. So this old-fashioned idea that people are going to meet face-to-face and negotiate a contract doesn't really apply in many of these consumer situations. But the important thing I think that the cases tell us is don't look at the number of communications. Look at what happened in the communication. And we contend that the evidence, the allegations, show that what happened is the Lewis's were advised that they were negotiating with people from Illinois, that there would be children there, that there would be a 50th birthday there. And they failed and they omitted to disclose what they knew. Remember, their affidavits don't contain any such claim to the Illinois plaintiffs. So they lured them in without giving them warning is what we're saying. And yes, I think if you do that, whether it be in one conversation or two or three, whatever it be, I think that is a sufficient basis under which you can exercise personal jurisdiction. The cases talk about the transmittal of allegedly misrepresentations and fraudulent communications. That's what we allege here. That's what we allege happened. We allege it with regard to the initial posting, and I understand that may be not enough. But we also allege it with regard to the communications, albeit limited. That was an opportunity for the Lewis defendants to say something about the smoke detectors. Hey, you're going to have a 50th birthday there? They didn't do anything about that. They withheld that is what we allege. And I can see, well, maybe you're thinking, well, maybe that's just not right. Maybe I don't believe that. All we can do is ask the Lewis defendants to submit an affidavit based on their knowledge of what they knew and did. And as I stand here before you, their affidavit doesn't say a word about how they didn't know about this issue. Not a word. I'm not that familiar with the – I read this quite some time ago. Oh, I'm sorry. Does your allegation say how you know they knew, or is it just a –  They knew that there were – I mean, does it give a basis of that knowledge? I mean, is that a well-pledged fact? Yes, yes. What does it say? It's going to take me a second to find if you don't mind. Of course. We're not – we don't stop people. And while I look for this, that's another point I would make. If there was an insufficiency in the pleading and the complaint, the complaint would be dismissed without prejudice to refile. That's not what happened here. Not if it's jurisdictional, counsel. If it's jurisdictional, you cannot cure that with your complaint. It's a jurisdictional factor that it was dismissed based on. So you could allege all the facts in the world, and if you don't have jurisdiction, you're not going anywhere. Sure. Yes. Thank you. All right. At A – or, excuse me, at C-171 – this is paragraph 53 of the First Amendment complaint – it alleges that the Lewis defendants made false and misleading representations about the house and their promotion, advertising, and marketing of the house in Cook County, Illinois, to Baltimore as a Morris senior, including that the house was habitable and safe and the house was equipped with smoke detectors when, in fact, the house and its furnishings were unreasonably dangerous and those smoke detectors did not provide a reasonable opportunity for occupants to escape a fire in the house. The Lewis defendants knew, or reasonably should have known, that the house was not safe and that its furnishings were unreasonably dangerous and that the smoke detectors did not provide a reasonable opportunity for occupants to escape a fire. The Lewis defendants made these false and misleading representations about the house with the intent that renters and their guests, like Ms. Gilbert and Mr. Zamora, would rely on these deceptive representations in agreeing to rent or occupy the property. And, in fact, Mr. Zamora relied on that deception in agreeing to celebrate his birthday there. We talked about it before. I'll just touch on it again. The nexus that I talked about with regard to the forum conduct of the Lewises and the underlying controversy is quite close because the Lewis defendants were advised of the fact that there would be this birthday, 50th birthday gathering, right? And they knew about the deficiency in the smoke alarms and that is what is alleged to, in the underlying controversy, that those smoke alarms failed to sound an alarm in the presence of slow smoldering fire. So those communications, too, and those omissions, the omissions as well in the communications, is the nexus between the conduct by the Lewis defendants and the underlying controversy. Excuse me. I'm going to talk a little bit about the personal jurisdiction analysis. Specifically with regard to Kitta, it's important that the court understand that Kitta does not contend that it would be unfair for them to defend this lawsuit here. Kitta has conceded that through its sale of tens of millions of dollars of smoke detectors here, through its attendance at fire safety conferences, it would be reasonable. It had fair notice and it would be reasonable for it to be sued here. The trial court made that same finding and Kitta has not appealed that. Kitta, however, contends that they're not subject to personal jurisdiction here because there's no affiliation between Illinois and the underlying controversy. Our view is that Kitta is simply ignoring or attempting to overcome allegations that show that it made misrepresentations and omissions in the state of Illinois upon which Mr. Zamora relied in agreeing to celebrate his birthday at the Airbnb rental. And one of the cases that Kitta relies most heavily on is the Bristol-Myers-Squibb case. And this is a case that I'm sure the court is familiar with in which the U.S. Supreme Court is thought to have narrowed very substantially. Specific personal jurisdiction. And I haven't said it and I'm sure that you're aware of it. There are two kinds of jurisdiction, general jurisdiction and specific jurisdiction. After decades of jurisprudence, that's been changed and now general jurisdiction really requires that a party have a second headquarters in the state. We're not alleging that. We're alleging that there is specific personal jurisdiction. And what Bristol-Myers-Squibb said, and it was Judge Alito who wrote it, said in order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum state. And the activity and the occurrence that's alleged to have taken place in Illinois are the false and misleading representations by Kitta throughout the state and specifically at the Home Depot stores where Mr. is and more are warned about its ionization smoke detectors. So does it make a difference if these smoke detectors that you're referring to in Illinois were not purchased in Illinois, they weren't purchased by Illinois residents, had no connection with Illinois other than the reimbursements? Well, and I appreciate the question and I know that's an argument they make. And I made an argument in our papers, I think really it goes to the heart of this thing. Smoke detectors are unique and vital. And when we go out of our own homes and stay elsewhere, whether it be within the state or other places, what we know about fire safety, especially with regard to smoke detectors, comes from the representations made by the smoke detector industry, including Kitta. So the sale and the installation of the smoke detector is not important. What's important is what we all know and what actions, omissions, and representations were made to us. And I will tell you we have alleged and we will prove that for decades Kitta has withheld information about the existence of two kinds of smoke detectors and the need for both. Why they have done that, you might be asking yourself. We don't know yet. We haven't taken their deposition yet. But we will find out. One obvious problem is if Kitta had to admit, as they do now, that ionization smoke detectors are not adequate, they could have a huge multi-billion dollar liability for all the ionization smoke detectors that will be sold. The other thing I wanted to say about Bristol-Myers-Squibb is that's a case in which the court did find that there was no specific personal jurisdiction. And that case really points up the difference between the Bristol-Myers case and our case. In Bristol-Myers, it was a plaintiff who had taken a drug, Plavix, in his home state, but sued Bristol-Myers-Squibb in California because it's a better jurisdiction for them. And what Bristol-Myers-Squibb said is there is nothing that happened in your state that's related to California. So you can't have specific personal jurisdiction. We're different because we allege, and they don't refute, in fact, their testimony supports, that they made misrepresentations in the state of Illinois relied upon by Mr. Zamora. And those affected his ability to perceive what dangers he faced when he was at the Airbnb rental. He didn't know that not every smoke detector can detect all kinds of fire because he wasn't told it. That's what we're saying. I'm going to give you a couple more minutes. Oh, am I running late? Sorry. Pretty much. Okay. Let me touch on something that you had raised, Judge, and I apologize for not getting to it. This is with regard to the Lewis defendants. I understand the court's hesitancy. Because the Lewis defendants don't normally regularly do business here, you might say, well, how can we have jurisdiction over them? The Illinois Supreme Court, in the Russell case, said that a certain single or occasional act can subject a nonresident defendant to a foreign state's jurisdiction. It's cited in our papers. The Burger King versus Rudzewick case says the rationale for permitting the exercise of personal jurisdiction over a nonresident defendant who purposely directs its activities towards the forum, even if only for single or occasional acts in the foreign states, rests on two points. The forum states compelling interest in providing its residents with a convenient forum to redress injuries caused by out-of-state defendants. That's here in a huge way. Mr. Zamora's children are now adults with their own children. They've got daycare. They've got a mother who's terminally ill. They both have jobs they cannot miss. And that gives us jurisdiction, how? That shows that the conduct by, the singular conduct by the Lewis defendants, justifies the exercise of personal jurisdiction for two reasons, one of which is the compelling basis on which Illinois wants to provide its residents. Thank you, counsel. Am I done or do you want me to? That's enough, huh? You're done. Okay. Thank you, Your Honors. Good morning, Justices. May it please the Court, my name is Virginia Price. I'm from McGuire Woods, and I'm here on behalf of United Technologies Corporation and Walter Akita Portable Equipment, Inc. Those are two different defendants. Plaintiff's counsel seems to conflate the two throughout this litigation. They are two separate companies, two different defendants, and I'll try and make my argument brief. But the Court's well aware that we are here on a jurisdictional question and specifically on specific jurisdiction. As plaintiff's counsel indicated, general jurisdiction is not at issue here. This is a motion to dismiss for lack of jurisdiction. This is not a motion to dismiss for failure to state a claim. We are not here at this stage to admit or deny the allegations of the complaint. We are here on the issue of jurisdiction. So when looking at the complaint and looking at the other record evidence, we have to see whether or not that record supports a specific jurisdiction finding, and we would ask this Court to affirm the trial court that there is no specific jurisdiction for either UTC or Akita under the record of this case. There are many purported facts that are not at issue on appeal that WKPE and UTC dispute, both in the papers that are before this Court and in the argument that was made this morning, but I'm not going to go through all of this and give credence to those allegations today. I would ask the Court to take a look at the first amended complaint, which is the operative complaint here. Specifically on record page 183, paragraph 113, it states that defendants UTC and Akita made false and misleading representations, quote, throughout the country including Cook County, Illinois, and Maine, end quote. There is nothing specific in the first amended complaint that ties either UTC or WKPE to advertisements that Mr. Zamora saw in Illinois. The first amended complaint is completely devoid of any allegation that Mr. Zamora saw ads from either UTC or WKPE in Illinois that deceived him. And that paragraph 113 makes that abundantly clear when he says that UTC and Akita had advertisements throughout the country including Cook County, Illinois, and Maine. He doesn't isolate that the advertisements were in Illinois. He doesn't get to that point until he has the inadmissible affidavits, which are nearly identical affidavits for two different people, Mr. Zamora Jr. and Ms. Cardellino. And only then, only in those inadmissible affidavits is there a tie back to Illinois where he alleges that Mr. Zamora told both his son and his daughter that he saw Akita advertisements for smoke alarms when he worked in the Home Depot. He didn't hear advertisements. He didn't see any other advertisements. We have no idea what products he was talking about when he allegedly saw those advertisements in the Home Depot. We don't know if they were for a specific smoke alarm. They even match the smoke alarms that were eventually found to be in the residence in Maine that he alleges that obviously Akita would deny were defective. There's simply no tie to Illinois under this record. And that's what specific jurisdiction requires. It's not only whether or not there are minimum contacts, which is where Plaintiffs' Counsel focuses its argument. It's not just a minimum contact analysis, but the allegations have to directly arise out of or substantially connect to the claims in this case. And there's simply no evidence on this record that tie UTC or Akita to Mr. Zamora's claims. So we would ask that the court affirm the trial court's decision that there is no personal jurisdiction over UTC or Akita. As to UTC, there's really absolutely, even if you accept the affidavits as admissible, which they're an admissible hearsay, but even if you accept those affidavits, as to UTC, they don't even make an allegation about UTC having any advertisements. If you look at the affidavits, which are at record page 25 through 27 and 30 through 32, again, they're identical. They say, my father told me that he saw advertisements and in-store displays with Kita smoke detectors while at work for Home Depot. There's no allegation as to seeing UTC advertisements. So even if you accept the inadmissible affidavits, there's nothing that ties UTC to this case. And then, again, going back to page 183 of the first amended complaint, within paragraph 13, there's nothing that ties UTC to specifically advertising in Illinois and in Mr. Zamora seeing that advertisement in Illinois. So we would ask that this court affirm the trial court and dismiss the complaint against both UTC and WKPE for lack of personal jurisdiction. I'm happy to answer any questions, or I'll yield the rest of my time to Mr. Holman. Thank you very much for your time. Good morning, Your Honors. I will be as brief as you'll let me be. The one thing I want to reiterate that was just stated, that was kind of lost earlier today, that this case is before you on a motion to dismiss the case against defendants for lack of jurisdiction. That is the issue that is before you. Do the Illinois courts have jurisdiction, in my case, over the Lewis's in Illinois for a fire that occurred in May? That is what we need to address today. And Judge Gillespie, when he wrote his memorandum in order, he did an outstanding job of going through what it takes to do a jurisdictional analysis, starting with the Illinois long-arm statute, breaking that down between, are we talking about a transactional issue or are we talking about a tort issue? When he discussed the transactional issue, he raised the question of who initiated this contract, where was this contract formed, where was the performance to take place, and where was it negotiated? And he looked at those issues and he said, well, this transaction was initiated by the Gilberts, not by the Lewis's. The contract was formed somewhere in the Internet, and he recognized that the law in this area now tries to stay away from mechanical breakdowns, says yes, jurisdiction, no, not jurisdiction. So he gave it little weight, said it tended to favor, no jurisdiction over the Lewis's. He then said, okay, where was this contract to be performed? Obviously, it was going to be performed in May. That's where the house was, that's where the owners lived. Ultimately, that's where the fire took place. And finally, where was the contract negotiated? I think his conclusion on that is that it was negotiated somewhere over the Internet, not necessarily Illinois, not necessarily Maine, but not really important to this transaction at all. So he concluded that the question that had to be answered was, did this contract have substantial connections to Illinois, and he concluded no. So therefore, he found no long-arm jurisdiction based on the transactional piece. Then he looked at the tort case. The tort case, he said, where the tort occurs is where the injury occurs. The injury here occurred in Maine. There was nothing that was done in Illinois that led to the injury, meaning this house burning down and tragically killing two people. So he also concluded that the result of a long-arm analysis under the tort theory tends to favor no jurisdiction. But he didn't stop there. Then he moved on and talked about the due process aspect, which I think he could have stopped his analysis there. He started it there. I'm sorry. What I meant is he could have stopped with the long-arm statute. But he went on and looked at how does the due process come. And that's what gets us into the minimum contacts, where did the action arise out of, and is it reasonable to require this out-of-state defendant to litigate in Illinois. Mr. Van Pembroek talked about the eBay cases, and there's a lot of eBay cases out there. And the courts have made it, and Judge Gillespie drew the distinction that Mr. Van Pembroek is trying to draw, and that is in the eBay cases, eBay has no choice as to who ultimately buys the product. So the person who puts the product up for auction is stuck with that buyer. He says not so in the Airbnb case because the Airbnb hosts, they call them, have the option to accept or reject the proposed tenant. But, and Judge Gillespie recognized, so that's different in the Airbnb type of case. The thing is, that doesn't mean that because we got to select or accept a particular renter, that doesn't mean there's jurisdiction. That just means you need to look at more of the other factors. Where are the minimum contacts? Where was the, where was the? Don't worry. Are there paper towels over there? There's a little. Oh, it's fine. It's fine. Okay. I just don't want him to get wet. My wife would kill me first. She'd see this. So when Judge Gillespie was looking at the eBay case, the one that he talked about was McNeil versus Trampert, he said, if the Lewises, like the McNeils in that case, they were not specifically targeting Illinois residents. They targeted the U.S. foreign countries with the information that is in the Airbnb website describing the various properties. Talked about what contact had the Lewises had with Illinois. Said, well, they've had no other rentals of that property in Illinois. They haven't been in Illinois, either of the Mr. and Mrs. Lewises, for 25 years. They have no knowledge where the renters might come from, nor do they really care, because they enter into the contract somewhere over the Internet. It doesn't matter whether they're sitting in Illinois, Texas. Julie Gilbert, for example, she's from Maine. Said she was in Chicago. She could have accepted that contract in New York. It doesn't make any difference to the Lewises where that contract is accepted. Now, in the Trampert case, the seller owned the website. We don't own the website. So, not the Trampert case, but we just operate on Airbnb's website. It's not something we control. The information is put up there for people to look at and make a decision. So, I'm going to get into the context more specifically. But then you look at, does the action relate to, does this cause of action relate to the Lewises' contact with the state of Illinois? There's nothing here that's contacted with Illinois that has anything to do with the cause of action. The cause of action is a tort action and an alleged fraud action that occurred in Maine. The reference to amenities and then the word smoke detectors, that's what counsel is relying on to say. We have spread the word, but we haven't told them, and we knew and we should have told them. Well, and your honors talked about, well, this is not a motion to dismiss case. What's alleged? Well, the allegations, if they're accepted, they're accepted as true for jurisdiction, not accepted as true for the facts as it relates to the cause of action. Those facts don't mean anything when it comes to jurisdiction because in the Airbnb information, it says smoke detector. That information went out to the public long before Ms. Gilbert decided she wanted to have a party in Maine. So, that is the type of activity that is directed to the world as a whole. It's not the type of activity that's directed either at the potential renter or what's important in the minimum contact analysis is was it something that was directed to the state and was it some action in the state so that the so-called fraud, well, maybe it's very relevant to the case once it gets going somewhere. It really has no relevance to whether there's jurisdiction for this case. The thing that I would like to talk about then is the minimum contact, and that's really what this case is about. And I'd just like to go down what those activities are so we get a complete picture of what occurred here. The Lewises posted their home in Maine on the Airbnb website. Cases say posting something on a website in and of itself is not sufficient to render jurisdiction over the party that posted it. That's the first thing the Lewises did. The next thing that occurred was Julie Gilbert contacted the Lewises, not the other way. Julie initiated the transaction, and in this email that was read to you, Julie said, I'm contemplating having a party. And the response to that email was even shorter. It was one sentence that said, I look forward to meeting you. Now, counsel for the plaintiff wants you to believe that those two emails constituted an agreement to amend the contract, the information that said no parties. So to get around that, put some more dirt on the Lewises, that's an amendment, that's a difference from what's posted based on that. Well, they did go to law school a long time ago, but I know that's not offer acceptance and compensation. But that's what he wants to turn into, that we negotiated an amendment in Illinois and now we're stuck in Illinois, unless that's not the case. Then the plaintiffs also, and it wasn't brought up in argument today, but in their papers they say there are two other occasions where the Lewises agreed to amend the contract if it could be. One was, there's a publication put out by Airbnb, and it's in the record. It says, earn up to $110. Share your personal invite link to give friends 35 off their first trip. You get 35 when they travel. This is a document put out by Airbnb. There's nothing on here that ties this into the Lewises whatsoever. But it was some amenity, some treat that Airbnb made available to potential customers of it. Then there was another one that, this is in the record, supplemental record, page 118. It's an Airbnb paper. It says, hi, Julie. If you're looking forward to your trip, treat yourself to another vacation day. We make it easy to request an extra day or two for your host. We make it easy to request an extra day or two from your host, Trina, if they accept. You can only delay packing for a little longer. To extend your stay, you, Ms. Gilbert, can request a reservation alteration from your host. That's a proposal made by Airbnb, not by the Lewises, and it was never accepted in any event. So it's meaningless for evaluating the jurisdictional issues here. Now, it also makes a big deal out of that the Lewises knew these people were from Illinois. Well, that's not true either. The email from Julie said, I'm from Maine. I live in Chicago. I'm bringing other people to a party in Maine. We don't know where those people are from. We don't know if they're relatives from all around the globe. The thing is, it doesn't really matter. They just like to say, well, they're from Illinois. That means we targeted Illinois. Well, that doesn't mean anything along those lines, because the targeting to the extent that it existed is what went out to the entire country and to the whole world, to anybody who wanted to pick it up, because it takes about five minutes or less to become a member of Airbnb and access this. So any one of us could get access to that. And that's kind of the heart and soul of the minimum contact test, that there has to be minimum contacts with the state. Ours was connecting with supposedly an Illinoisan over the Internet. And then there has to be some targeting to the state. Here, there is none of that. We didn't seek out... I'm sorry. I'm going to give you a couple more minutes. Pardon? I'm going to give you a couple more minutes. I can quit whenever you're ready. I think it's just important to point out that there was no targeting in the context of the due process analysis of jurisdiction in this case. So we would ask that you affirm the decision as to the Lewis's. Thank you. Thank you. Thank you for all your time and attention. I know it's been a long case. Specifically with regard to the argument made by KIDA and UTC that the complaint does not allege that UTC and KIDA made misrepresentations in the state of Illinois. Counsel referred to Record C-183 in paragraph 113. I won't read the whole thing to you, but it says very specifically that UTC and KIDA made false and misleading representations in Illinois. In the very next paragraph, paragraph 114, and I will read it because it's short, it says, Defendants UTC and KIDA intended that their deception about the subject smoke detectors would be relied upon by consumers and, in fact, Baltimore Zamora Sr. relied on this deception and agreed to remain at the house during his birthday celebration. Counsel said to you there is absolutely no information in this record on which you can determine that this allegation exists. It's right there in the first amendment complaint. We allege that Mr. Zamora relied on the misrepresentations delivered to him in the state of Illinois. That didn't just come up in affidavits as counsel had referred to. That's in this complaint, and that's jurisdictional. And you heard counsel say, well, we don't have to deny everything you say in your complaint. What we alleged is that KIDA and UTC made fraudulent misrepresentations, tortious conduct in the state of Illinois upon which our deceased relied upon. They have an obligation, because that is jurisdictional, to counter it, and they didn't. With regard to the arguments made by the Lewis defendants, it's very clear that – well, let me back up. There are cases – I'm going to give you a couple minutes. Yeah, there are cases that – I'm sorry, I was ruminating too much there, wasn't I? Yeah. There are cases cited in our papers that are very specific about singular acts giving rise to specific jurisdiction. I urge you to look at those, because we've explained them quite clearly there. This is the kind of situation in which we allege the Lewis defendants not only contracted with these Illinois residents knowingly, but knowingly omitted life-critical safety information. You didn't hear counsel for the Lewis defendants say anything about how the Lewises have denied that they knew about the deficiencies of the smoke detectors in their home. Thank you, Your Honors. Thank you. I thank you all. We will take this case under advisement, and we will stand in recess.